UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL A. HEON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 8-140-B-W |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDED DECISION**

In November 2003 Michael Heon was arrested after he fired a shotgun into the window of a vehicle occupied by his ex-girlfriend and her boyfriend. Heon is serving consecutive sentences in the State of Maine on two counts of aggravated assault, a Class B crime. The maximum sentence for each count is ten years. Heon pled guilty to the charges pursuant to a plea agreement that included the dismissal of four Class A charges, two counts of aggravated attempted murder and two counts of elevated aggravated assault. Each of the Class A crimes carried potential penalties of at least up to twenty years and one dismissed count carried a potential life sentence. On the first count Heon received a sentence of ten years imprisonment. On the second count he received an additional consecutive ten years of imprisonment, entirely suspended, with four years of probation. After his conviction and following his unsuccessful attempt to obtain post-conviction relief in the state court, Heon filed this petition alleging ineffective assistance of counsel during the guilty plea process. The State of Maine has now moved to dismiss the petition. I recommend the motion be granted and that Heon's 28 U.S.C. § 2254 petition be denied. I further recommend, in the event a notice of appeal is filed, that a certificate of appealability issue in this case for the reasons set forth in my conclusion.

## Discussion

***State Court Procedural Background***

On December 3, 2003, the Androscoggin County Grand Jury returned an indictment charging the petitioner, Michael Heon with: two counts of Class A aggravated attempted murder; two counts of Class A attempted murder; two counts of Class A elevated aggravated assault; and two counts of Class B aggravated assault. Heon entered pleas of not guilty at his December 4, 2003, arraignment. On February 3, 2004, the Grand Jury returned a superseding indictment that dropped one of the counts of aggravated attempted murder. Heon entered pleas of not guilty at his February 5, 2004, arraignment. On October 1, 2004, Heon changed his earlier not guilty pleas on the two aggravated assault counts to guilty. The plea was tendered pursuant to a plea agreement in which the State agreed to amend an allegation in one of the aggravated assault counts that Heon committed the offense with the use of a firearm (thus eliminating the mandatory minimum two-year term of imprisonment as to that count) and to dismiss the remaining charges in exchange for Heon pleading open. An "open" plea meant the court was not bound as to the length of the sentences on each count by any agreement of the parties pursuant to the provisions of Maine Rule of Criminal Procedure 11A and could impose any sentence up to and including the maximum ten-year sentence allowed by law. A further component of the plea agreement was that the sentences on each count of aggravated assault would be served consecutively, but that whatever sentence was imposed on count four of the indictment, it would be a totally suspended sentence with a period of probation. The case was then continued for sentencing. On December 3, 2004, the Superior Court (Gorman, J.) imposed a straight ten-year term of imprisonment on one of the counts, and a consecutive ten-year term of imprisonment on the other count, which the court entirely suspended, followed by a four-year period of probation with special conditions, and

restitution in the amount of $ 9,500. On December 21, 2004, Heon filed an application for leave to appeal his sentences as provided by Maine Rule of Appellate Procedure 20 and 15 M.R.S. § 2151. On March 22, 2005, the Sentence Review Panel of the Supreme Judicial Court denied the application for leave to appeal sentences.

Heon then turned to the state post-conviction process. He filed a state petition for post-conviction review pursuant to Maine Rule of Criminal Procedure 68 and 15 M.R.S. § 2129, alleging ineffective assistance of trial counsel and involuntariness of his plea. In Heon's pro se post-conviction petition he listed multiple errors he believed were made by his trial counsel, and he also asserted that he did not understand what would happen if he pleaded guilty, that the court had failed to abide by the parties' plea agreement, and argued that the court had treated him unfairly. On February 8, 2006, an evidentiary hearing was held on the petition. On February 23, 2006, the Superior Court (Gorman, J.), in a written decision, denied the petition. Heon filed a notice of discretionary appeal and a memorandum in support of his request for a certificate of probable cause. The Maine Law Court issued an order granting a certificate of probable cause to proceed with an appeal of the denial. On September 18, 2007, the Maine Law Court, in a split written decision, affirmed the Superior Court’s denial of Heon’s post-conviction petition. Heon v. State, 2007 ME 131, 931 A.2d 1068. Heon filed a petition for certiorari in the United States Supreme Court. His petition was denied and he has now brought this petition pursuant to 28 U.S.C. § 2254.

***Heon's 28 U.S.C. § 2254 Claims***

Heon's initial 28 U.S.C. § 2254 petition raised one Sixth Amendment Ineffective Assistance of Counsel claim. As explanation he stated only:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed which district shall have been previously ascertained by law and to be informed of the nature and cause of the accusation, ect. ect.

(Sec. 2254 Pet. at 5.) This being an insufficient statement of a § 2254 claim, in an order to supplement, I issued the following directive to Heon:

> I will have no alternative but to order the petition summarily dismissed unless the petitioner supplements the petition with FACTS that support a claim of a constitutional violation. …
> …
> If Heon wishes to pursue this matter and believes it is not time-barred and that the court should address the merits of the petition, the petitioner must supplement his petition with an amendment that sets forth the FACTS that support his claim of ineffective assistance of counsel…

(May 6, 2008, Order at 1-2.)

Heon responded with the following supplement:

> I did have a discrepancy, my attorney making me plead guilty to two aggravated assault charges and I told him I was probably not guilty of any or one. Prejudice was demonstrated. I wanted deep down a new trial. This is at post-conviction where I took oath. Please see case Laferriere v. State, 1997 ME 169, ¶ 8, 697 A.2d 1301, 1305. P.S. I never got Discovery. It would please me if this honorable court could use the following copyworks of judgment affirmed by state Supreme Justices, Calkins, J. with Alexander, J.

(Sec. 2254 Supp. at 1, Doc. No. 5.) Heon includes a copy of the written opinion of a justice of Maine Law Court which is a dissent in Heon's appeal of the state trial court's post-conviction decision.

There are three other pleadings on the docket from Heon. Two of which he identifies as "retrospects" (Doc. Nos. 13, 15) and one of which is a letter which cites to two cases with a brief argument (Doc. No. 14).

***The 28 U.S.C. § 2254(b) Exhaustion Requirement***

Congress has provided that a 28 U.S.C. § 2254 petitioner must fully exhaust his or her remedies in the state court prior to turning to the federal courts for habeas relief:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> > **(A)** the applicant has exhausted the remedies available in the courts of the State; or
> > **(B)(i)** there is an absence of available State corrective process; or
> > **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).

With respect to his representation that he told counsel that he was probably not guilty, the record is clear that Heon did not raise this as a distinct ineffective assistance claim in his petition for post-conviction review (see State Court Rec. C at 11-4) or in his memorandum in support of issuance of a certificate of probable cause (see id. at 41-44).[1]

The three issues Heon did ask the Maine Law Court to address included an ineffective assistance of counsel claim, a claim that the trial court violated a plea agreement, and a claim that his plea was involuntary. (Id. at 42.) With regards to the ineffective assistance claim, Heon's post-conviction counsel argued that Heon "had obvious mental and emotional problems and did not clearly understand the plea agreement that had been negotiated by his trial counsel." (Id. at 43.) This memorandum pointed to a psychological evaluation that characterized Heon as a person "with cognitive problems who could make mistakes in assessing reality"; "a person of limited intelligence"; a person with "a view of the world … informed by his fantasies"; a person "easily intimidated"; and a person whose

[1] It is my guess that Heon is not actually attempting to raise a distinct ineffective assistance ground here but is relying on the dissent's footnote reference (addressed below) to this alleged conversation in suggesting that Heon may have been able to make a showing of prejudice had the Maine Law Court not concluded that he could not demonstrate that his attorney performed constitutionally inadequately vis-à-vis the plea. I think his reference here is really an indication that he wishes to rely on that dissent as the meat of his 28 U.S.C. § 2254 argument.

"thinking becomes disorganized under stressful circumstances to the point of severe distortions of reality." (Id.) Heon summarized:

> [Lead counsel][2] knew of the limitations on his client's ability to appreciate and understand the significance of the plea offer and of sentencing risks. Notwithstanding the serious nature of the charges, he permitted student attorneys to interview Mr. Heon unaccompanied by [lead counsel]. The State did not produce any evidence that [lead counsel] or any student presented the petitioner with a written plea offer for him to consider and reflect on. Mr. Heon testified that he thought that the sentencing argument would center on whether or not he would serve two or three years and that he was confused about what the sentence would be. Mr. Heon surrendered his right to a jury trial because he thought he would receive a few years, at most, in prison. He did not plead guilty knowingly or voluntarily. He lacked the mental capacity to appreciate the risks associated with the plea offer that had not been properly communicated or explained to him. Because [of] his attorney's deficient performance, Mr. Heon was subjected to a sentencing decision that resulted in many years of confinement. He was never provided with the opportunity to rationally compare the risks of a trial against the risks of receiving a long term imprisonment, because he did not fully understand the plea offer that had been presented to his trial counsel.
>
> The post-conviction court committed reversible error by finding that the Petitioner failed to demonstrate that [lead counsel's] conduct fell below the standard of an ordinary fallible attorney and that his plea was voluntary. There was no credible evidence to support the decision of the post-conviction Justice. ….

(Id. at 43-44.) Accordingly, this is the ineffective assistance claim that was fully exhausted by presenting it to the Maine Law Court and requesting review. And the Maine Law Court, in granting discretionary review, concluded:

> It appears that the appeal raises issues that are worthy of a full hearing in this Court to consider, specifically whether the post-conviction court erred in concluding that Michael Heon received competent representation of counsel that sufficiently advised him of the nature and possible consequence of his Rule 11 plea and properly determined that he was competent to enter a plea considering his emotional and physical conditions.

[2] On November 5, 2003, the Maine District Court judge before whom Heon first appeared assigned a member of the faculty of the University of Maine School of Law to represent him. That faculty member provides legal assistance to clients directly and as the faculty supervisor of a number of students enrolled in the law school's Cumberland Legal Aid Clinic. Mr. Heon consented to being represented by various law students under the supervision of lead counsel throughout these proceedings according to the post-conviction judge's written findings. One particular law student who apparently testified at the post-conviction proceeding provided most of the assistance to Mr. Heon while under lead counsel's supervision.

(Id. at 45.) By presenting this court with the dissenting opinion in his supplemental filing, I conclude that Heon has fully exhausted this claim and has adequately asked the Court for 28 U.S.C. § 2254 review. No other claims mentioned by Heon elsewhere in his submissions to this court meet the 28 U.S.C. § 2254(b) exhaustion of remedies requirement.

***Standard for 28 U.S.C. § 2254 Review of State Court Determinations***

"This case is governed by the standards of review established by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, and the well-established Strickland test for ineffective assistance of counsel claims. Strickland v. Washington, 466 U.S. 668, 687 (1984)." Sleeper v. Spencer, 510 F.3d 32, 37(1st Cir. 2007). "Under AEDPA":

> if a state court has adjudicated a habeas petitioner's claim on the merits, a federal court may issue the writ only if the state court's adjudication resulted in a decision that "was contrary to" clearly established federal law, involved an "unreasonable application" of clearly established federal law, or was based on an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C § 2254(d).
>
> A state court's decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite from that reached by the U.S. Supreme Court on a question of law, or if the state court decides the case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000).
>
> A state court's decision unreasonably applies clearly established federal law if the state court correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply. L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir.2002) (citing Williams, 529 U.S. at 407). If the state court does not expressly apply the federal standard but resolves the issue under a state law standard that is more favorable to defendants than the federal standard, then the reviewing court "will presume the federal law adjudication to be subsumed within the state law adjudication." Teti v. Bender, 507 F.3d 50, 54-55 (1st Cir.2007) (quoting McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir.2002)). To be unreasonable, the state court's application of existing legal principles must be more than merely erroneous or incorrect. Williams, 529 U.S. at 411. "We agree with the

> Second Circuit that 'some increment of incorrectness beyond error is required.' Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000). The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge, 303 F.3d at 36.
>
> In reviewing a habeas corpus petition under AEDPA, a federal court will presume that the state court's findings of fact are correct. For this purpose, the term "facts" refers to "basic, primary, or historical facts," such as witness credibility and recitals of external events. Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001) (quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). The habeas petitioner may defeat the presumption of correctness only with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see also Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir.2002). The presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the findings of fact. Norton v. Spencer, 351 F.3d 1, 6 (1st Cir.2003) (quoting Sumner v. Mata, 455 U.S. 591, 593 (1982)).

Id. at 37-38. See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999).

***The State Court Determinations***

In her order on post-conviction review, the Superior Court Justice found and reasoned as applicable:

> In his petition, Mr. Heon claimed that the court had failed to abide by the parties' agreement as to sentencing, and/or that he did not understand the terms of the agreement. The transcript of the Rule 11 proceeding demonstrates that his claim is inaccurate:
>
> > Mr. Turner: *On count seven, your honor, that* is open, and we have agreed that count four would be consecutive, the sentence on count four would be consecutive to the sentence on count seven, but that would be, whatever it is, a totally suspended sentence with probation.
>
> Rule 11 at 6:5-10. (Emphasis added.) The sentence the court imposed complied with the terms of that agreement. Mr. Heon was standing within twelve feet of Mr. Turner at the time Mr. Turner recited the terms of the agreement. If Mr. Heon had disagreed with the recitation, or did not understand what it meant, he could have spoken with his attorney or even with the court at that time. Even if he had been too nervous to address his concerns on that day, Mr. Heon had an ample opportunity to review his

understanding of the negotiated plea between the date of the Rule 11 proceeding and the date of the sentencing hearing.

The petitioner argued that [lead counsel] did not "back up" the plea agreement. That allegation has already been discussed above. Mr. Heon also alleged that [lead attorney] had assured him that, if the judge "made an example of him," he would "get him out." He further alleged that [student attorney] had recommended that the less he said at the sentencing proceeding, the better it would go for him.

During his testimony at the post conviction proceeding, Mr. Heon stated that he had been confused about the plea, and that he expected to receive no more than two years in prison. This testimony, however, must be viewed in light of the testimony elicited from [lead counsel] and from [student attorney].

[Lead counsel] testified that he never told Mr. Heon that he could "get him out" of anything. [Lead counsel] was aware that Mr. Heon had some cognitive and emotional difficulties that limited his ability to process information when under stress. Because of these limitations, [lead counsel] and the students who worked with Mr. Heon spent large amounts of time listening to him and explaining, in great detail, the case investigation, the trial preparations, and the plea negotiations.

[Lead counsel] did explain [to] Mr. Heon that Count VII carried a mandatory minimum sentence of two years; he never told Mr. Heon that the State had agreed to a two-year sentence. Although [lead counsel] or one of his students should have sent a letter to Mr. Heon laying out the exact details of the negotiated plea, the court cannot find that the lack of such a letter constitutes ineffective assistance of counsel.

It is likely that many of Mr. Heon's claims are rooted in his own psychology. According to Dr. Ann Le Blanc, who prepared a forensic evaluation of Mr. Heon:

> He is a person whose aspirations considerably exceed his grasp, and whose view of the word is sometimes more informed by his fantasies than reality. He can focus on the parts of the real world that support his somewhat distorted view of himself, to the exclusion of other important information.
>
> ….
>
> When things don't go as he might like, it is less painful for him to see this as a result of the efforts of others who, secretly, and for unknown reasons, have it in for him, rather than to face the facts of his relative unimportance in the larger world.

LeBlanc evaluations, 5/7/2004, p.11. Mr. Heon's attorneys told him that the minimum sentence he could receive was two years; he focused on that number, rather than upon the "other important information," *e.g.*, the actual sentence imposed could be substantially longer than two years.

According to D. LeBlanc, Mr. Heon was competent to stand trial. Based on their myriad conversations with him, both [lead counsel] and [student attorney] believed he was competent to stand trial, and also

> competent to make decisions about how to handle his cases. Both [lead counsel] and [student attorney] believed that Mr. Heon understood and accepted the negotiated plea offered him by the State.
>
> [Student attorney] recalled that Mr. Heon did not appear either groggy or tired during the Rule 11 proceeding; he looked and acted as he usually did. The transcript of that proceeding shows that Mr. Heon told the court that he was not confused, that he was not overmedicated, and that he had no complaints about his attorneys. Rule 11 at 6:20-8:17. Although Mr. Heon might have been nervous during the sentencing proceeding, there is simply no credible evidence that his nervousness affected his ability to make a knowing and voluntary decision.
>
> Based upon the record and the evidence presented, the court finds that Mr. Heon has failed to demonstrate that his attorneys' conduct fell below the standard of an ordinary fallible attorney. In fact, the work performed by [lead counsel] and his students on Mr. Heon's behalf was thorough, professional, and skilled.

(State Court Record C at 32-37.)

A majority of the Justices of the Maine Law Court ruled as relevant:

> Viewing the evidence in the light most favorable to the prevailing party, as we must, see Dowling v. Bangor Housing Auth., 2006 ME 136, ¶ 22, 910 A.2d 376, 384, the post-conviction court made the following findings based on competent record evidence. Heon was competent to stand trial, and to make decisions about his case. Heon's attorneys spent a great deal of time discussing with Heon the case investigation, preparations for trial, and plea negotiations with the State.
>
> During the Rule 11 proceeding, Heon appeared neither groggy nor tired, and indicated to the court that he was not confused or overmedicated. He was aware of and understood the terms of the agreement made by his attorneys with the State, including that he would be sentenced consecutively on the two aggravated assault charges. Although he had multiple opportunities both during the Rule 11 proceeding and before the sentencing hearing, Heon failed to express any disagreement or confusion with regard to the agreement. Heon's attorneys represented him in a "thorough, professional, and skilled" manner, and indeed, Heon also indicated to the court that he had no complaints about his attorneys.
>
> II. DISCUSSION
>
> Heon argues that he was denied effective assistance of counsel because his attorneys did not adequately explain the plea agreement or recognize his lack of competency to enter a plea. For a claim of ineffective assistance of counsel to succeed, two elements must be established: (1) that the attorney's performance "fell below that of an ordinary fallible attorney," and (2) that "there is a reasonable probability that, but for [counsel's] error, [the defendant] would not have entered a guilty plea and would have insisted on going to trial." Aldus v. State, 2000 ME 47, ¶ 13, 748 A.2d 463, 468. The post-conviction court did not reach the second element, the prejudice

> requirement, because it determined that Heon failed to establish the first element. See Laferriere v. State, 1997 ME 169, ¶ 7, 697 A.2d 1301, 1304-05 (adopting Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985)).
>
> We review the court's determination of ineffectiveness for clear error. Pineo v. State, 2006 ME 119, ¶ 11, 908 A.2d 632, 637. In this post-conviction proceeding, it is Heon's burden of proof to demonstrate that his attorneys' performance was below that of an ordinary fallible attorney. See id. ¶ 10, 908 A.2d at 637. Heon failed to persuade the post-conviction court of this. Therefore, Heon can succeed in this appeal only if the evidence before the post-conviction court compels findings that Heon's attorneys did not inform Heon that he faced a maximum sentence of twenty years total for the two separate counts, and that Heon was unaware that he faced such a penalty, and further *compels* the ultimate finding that the performance of his attorneys was below the ordinary fallible attorney standard. See York Ins. of Me., Inc. v. Superintendent of Ins., 2004 ME 45, ¶ 15, 845 A.2d 1155, 1159; see also Aldus, 2000 ME 47, ¶ 19, 748 A.2d at 471.
>
> The evidence does not compel such findings. The testimony presented at the post-conviction hearing revealed that Heon had many meetings with his attorney and student attorneys prior to both the Rule 11 proceeding and the sentencing hearing. Although the particular phrase "twenty years" was never used, it is nevertheless clear from the record that Heon was very much aware at the Rule 11 hearing that he was pleading guilty to, and would be convicted of, two separate Class B aggravated assaults; that the maximum sentence for each of the Class B aggravated assaults was ten years; and that the sentences to be imposed for each would run consecutively. The post-conviction court found that at the sentencing hearing, Heon became focused on the minimum two-year sentence rather than on the actual sentence he could and did receive. The evidence also discloses, and the post-conviction court found, that Heon was competent and understood and accepted the negotiated plea, that he was not confused or overmedicated, and that had no complaints about his attorneys. The post-conviction court, having heard that evidence and having observed the demeanor of the witnesses, expressly found that Heon was represented by his attorneys in a "thorough, professional, and skilled" manner.
>
> Heon's attorneys successfully negotiated pleas on two Class B offenses and secured the dismissal of five Class A charges, one of which exposed Heon to a possible sentence of imprisonment for life. *See* 17-A M.R.S. § 152-A(2). The post-conviction court's findings are supported by competent record evidence, and the court did not commit clear error in concluding that Heon failed to meet his burden of demonstrating ineffective assistance of counsel.

Heon, 2007 ME 131, ¶¶ 5- 10, 931 A.2d at 1069 -71.

Two justices dissented and since I believe Heon relied upon that dissent in his § 2254 petition, I will set forth the reasoning of the dissent:

I respectfully dissent. In my view the performance of counsel is inadequate when the criminal defendant enters a guilty plea and the record of the plea proceeding does not demonstrate that the defendant was informed in the courtroom of the maximum prison sentence that could be imposed. Because the record of Heon's plea proceeding does not demonstrate that he was informed of the maximum possible prison sentence in open court, the post-conviction court was compelled to find that counsel was inadequate. I would vacate the judgment and remand for the court to consider the prejudice prong of the inadequacy analysis. See Laferriere v. State, 1997 ME 169, ¶ 7, 697 A.2d 1301, 1304-05 (adopting Hill v. Lockhart, 474 U.S. 52, 57 (1985)).

Our rules require that a defendant be informed, in open court, of the maximum possible sentence that can be imposed. M.R.Crim. P. 11(c). The purpose of Rule 11 is to insure that any plea by the defendant is made knowingly. The conviction of a defendant whose plea of guilty is not knowing and voluntary violates the defendant's due process rights. See Boykin v. Alabama, 395 U.S. 238, 243 n. 5 (1969).

Nowhere in the record of Heon's plea proceeding is there a discussion of the maximum possible sentence that could be imposed. The maximum sentence that Heon was facing if he pleaded guilty to two Class B offenses was twenty years. In fact, the sentence ultimately imposed on Heon was twenty years. Heon was never asked in open court if he knew that twenty years in prison was possible. The plea agreement had not been reduced to writing. Heon's attorney never made an affirmative statement at the Rule 11 proceeding that he had informed Heon of the twenty-year maximum possible sentence. Likewise, the prosecutor never stated at the Rule 11 proceeding that twenty years was the maximum possible sentence. Nor did the court itself inform Heon that he was facing a twenty-year sentence. In short, no one in the courtroom at the plea proceeding told Heon that twenty years was a possible sentence. No one asked Heon if he understood the maximum possible sentence.

At an absolute minimum, defense counsel should insure that Rule 11 is followed when there is a guilty plea, and we should require the "reasonably competent attorney" to make certain that the Rule 11 requirements are followed. To be sure, the Rule 11 responsibility is one that is shared by the court, prosecutor, and defense counsel. Each are responsible for not only insuring that the defendant's plea is voluntary, but for making certain that the record demonstrates that the plea is voluntary. The court is required to "address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, ... the maximum possible sentence." M.R.Crim. P. 11(c), (c)(1). When the court neglects to do so, however, either the defense counsel or the prosecutor should politely remind the court of this requirement. For example, when it is apparent that the court has forgotten to address the defendant on this issue, defense counsel could prompt the court to provide the required information to the defendant by stating something along the lines of: "Your honor, I have reviewed the maximum possible sentence with the defendant, and he is prepared to answer your inquiry about it."

The Rule 11 requirement that a defendant be told in open court of the maximum possible sentence was not met at Heon's Rule 11 proceeding.

> Because Heon's counsel permitted him to plead guilty without the requirement of the rule having been met and without the court ascertaining that Heon understood that he was facing a twenty-year sentence, counsel's performance was inadequate. The post-conviction court was compelled to find as such.
>
> A finding that counsel's performance was inadequate does not mean that the post-conviction court was required to grant relief. Heon still has the burden to demonstrate prejudice. As noted by the Court, the post-conviction court did not reach that issue because of its finding of adequate performance. Therefore, I would remand for the court to consider whether Heon was prejudiced.

Id. ¶¶ 11-15, 931 A.2d at 1071 -72 (footnote omitted). With regards to the potential prejudice showing, the dissent offered the following footnote:

> To demonstrate prejudice, Heon had to show that there was a reasonable possibility that he would have insisted on going to trial but for his attorney's performance. See Laferriere v. State, 1997 ME 169, ¶ 8, 697 A.2d 1301, 1305. At the post-conviction hearing, Heon testified he had a "discrepancy" with his attorney over pleading guilty to two aggravated assault charges and that he told his attorney that he was not guilty on one of the charges. This statement, if credible, may be enough to establish prejudice.

Id. ¶ 15 n.2; 931 A.2d at 1072 n.2.

***Recommended Disposition under the AEDPA***

First, the majority's decision in Heon v. State cannot be said to be contrary to clearly established federal law because the Maine Law Court did not arrive "at a conclusion opposite from that reached by the U.S. Supreme Court on a question of law," or "decide the case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts." Williams,529 U.S. at 405.

The question, then, is whether the Law Court's determination on the first prong of Strickland was an unreasonable application of clearly established federal law as determined by the United States Supreme Court. In Heon's case the state court never went beyond the performance prong of the ineffective assistance inquiry and, thus, never considered whether, but for counsel's errors, Heon would not have pleaded guilty and

would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004)(direct appeal holding that defendant must "show that there is a reasonable probability that, but for the [Rule 11] error, he would not have entered the plea.") Even though the trial judge at the time of the guilty plea erred under the provisions of Maine Rule of Criminal Procedure 11(c) in that there was no discussion of the maximum possible sentence of twenty years that could be imposed, see Heon, 2007 ME 131, ¶ 13, 931 A.2d at 1071, this court's review, at least in the first instance, is limited to whether the Law Court unreasonably applied the first prong of Strickland when it employed its "ordinary fallible attorney" standard to trial counsel's performance. See Aldus v. State, 2000 ME 47, ¶ 13, 748 A.2d 463, 468. See cf. Sleeper, 510 F.3d at 39 ("Because this court has previously determined that the standard used by the SJC in analyzing Sleeper's claim is at least as protective of defendants as the federal ineffective assistance of counsel standard, see Horton v. Allen, 370 F.3d 75, 86 (1st Cir.2004), cert. denied, 543 U.S. 1093 (2005), 'we will presume the federal law adjudication to be subsumed within the state law adjudication.' Teti [v. Bender], 507 F.3d [50,] 56 [(1st Cir. 2007)] (quoting McCambridge, 303 F.3d at 35).").

The Maine Law Court has made clear its intent that its "ordinary fallible attorney" standard is to be applied as if identical to the performance prong of Strickland. McGowan v. State, 2006 ME 16 ¶¶ 9-12, 894 A.2d 493, 496 -97 ("We have previously noted that the federal and state [Sixth Amendment] guarantees are virtually identical. The burden is on the defendant to prove both prongs.") (citation omitted). The only real issue raised here under the AEDPA standard is whether the Maine Law Court majority applied the Strickland performance standard "to the facts of the case in an objectively unreasonable

manner." L'Abbe, 311 F.3d at 96 (citing Williams, 529 U.S. at 407). To be unreasonable, the post-conviction Justice's and the Maine Law Court majority's application of the Strickland performance prong "must be more than merely erroneous or incorrect." Williams,529 U.S. at 411. Even assuming the dissent should be deemed to have the better view of the law, and the majority is in error, the "increment of incorrectness" in the majority's decision is not "great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge, 303 F.3d at 36.

With respect to the factual underpinnings of the state post-conviction court, embraced by the Maine Law Court's majority determination[3] and unquestioned by the

[3] I note that, based upon state post-conviction counsel's petition for certiorari (State Court Record E), it appears that Heon's primary quarrel with the Law Court's decision in his case is that it employed the wrong standard of review when it reviewed the trial court's findings and conclusions. Heon took issue with the Law Court decision because the review of the first prong factual findings was based upon a clear error standard of review in accordance with Maine Supreme Court precedent. For instance, in McGowan v. State the Law Court explained:

> In contrast with Strickland 's recognition that ineffective assistance of counsel claims constitute mixed questions of law and fact, we have reviewed the post-conviction court's findings and conclusions as factual determinations that are reviewed solely for clear error. Thus, in Aldus we stated:
>
> > Whether the performance of an attorney falls below the standard is a question of fact. "We will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it." Likewise, the finding of whether the petitioner was prejudiced by her attorney's error is a factual finding reviewed for clear error.
>
> 2000 ME 47, ¶ 14, 748 A.2d at 468 (quoting Tribou v. State, 552 A.2d 1262, 1264-65 (Me.1989)) (citations omitted).

2006 ME 16, ¶ 15, 894 A.2d at 498.

This standard of review is, of course, in direct opposition to the standard employed by the First Circuit which has specifically held that in federal post-conviction cases that it reviews findings of fact for clear error and conclusions of law de novo, applying a bifurcated standard of appellate review. Ruiz v. United States, 339 F.3d 39, 42 (1st Cir. 2003). Indeed the State of Maine has urged the Law Court to adopt that same standard of review. McGowan, 2006 ME 16, ¶ 16, 894 A.2d at 498 ) ("The State essentially argues that we should adopt a bifurcated standard of appellate review, reviewing the post-conviction court's factual findings for clear error and its legal conclusions de novo with respect to both analytical prongs. Because we conclude from the post-conviction record in this case that the court's application of the second prong regarding prejudice was in error regardless of whether we apply the deferential clear error standard of review or the de novo standard, we decline the State's invitation to address this issue."); id. 2006 ME 16, ¶ 14 n. 4, 894 A.2d at 497 n.4 (citing Ruiz); see also Francis v. State, 2007 ME 148, ¶ 5 n.2, 938 A.2d 10, 12 & n.2.

dissent, I must presume that the state court's findings of fact are correct and this presumption extends to findings on witness credibility and recitals of external events. Sanna, 265 F.3d at 7. There is no question that in his 28 U.S.C. § 2254 pleadings Heon has not defeated the presumption of correctness with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Ouber, 293 F.3d at 27.

**Conclusion**

Based upon the foregoing, I recommend that the State's motion to dismiss be granted and the petition denied. I further recommend that this court issue a certificate of appealability in the event Heon files a notice of appeal because the Maine Law Court decided this case over the dissent of two justices and there, thus, appears to have been, at least in the minds of two respected State Supreme Court justices, a substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2). The constitutional issue, as identified by the Maine Law Court, is whether or not Heon met his burden of establishing the first prong of the Strickland v. Washington, 466 U.S. 668 (1984) inquiry. If this recommended decision is adopted, this court has found that the state trial court and the state appellate court made decisions that were neither "contrary to, [n]or involved an unreasonable application of" the Strickland decision. However, in light of the split decision in the Law Court, further appellate review is warranted because quite obviously, reasonable minds can differ.

---

While this issue may intrigue appellate judges and academicians, I do not find it particularly relevant to the determination I must make regarding this case. As to the factual findings made by the state trial judge who presided at Heon's post-conviction proceedings, the standard of review I employ per the directive of 28 U.S.C. § 2254(e)(1) requires me to presume those findings to be correct.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 5, 2008